UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MEDICAL MUTUAL OF OHIO, | ) | CASE NO.: 1:23-cv-00409 |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT SUNYAK, | ) | **<u>PLAINTIFF'S MOTION FOR</u>** |
| | ) | **<u>TEMPORARY RESTRAINING</u>** |
| Defendant. | ) | **<u>ORDER</u>** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Medical Mutual of Ohio ("Medical Mutual"), moves this Court to enter a Temporary Restraining Order or Preliminary Injunction against Defendant Robert Sunyak ("Sunyak"), in the form attached and schedule a hearing regarding a Preliminary Injunction.

As explained fully in the Verified Complaint that is being filed herewith, if Sunyak is not immediately enjoined to prevent further violations of its contractual and legal obligations, Medical Mutual will suffer irreparable harm that cannot be adequately compensated by monetary damages. Furthermore, Medical Mutual has no adequate remedy at law, it is likely to succeed on the merits of its claims and issuance of the temporary restraining order and preliminary injunction is in the public interest and will not cause harm to others.

Plaintiff will present additional evidence at a preliminary injunction hearing to be set by the Court. A supporting brief and proposed Order are attached.

Respectfully submitted,

*/s/ Christopher C. Koehler*
Christopher C. Koehler (0059384)
ckoehler@frantzward.com
Michael E. Smith (0042372)
msmith@frantzward.com
Meghan C. Lewallen (0090762)
mlewallen@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216-515-1660 – Phone
216-515-1650 – Fax

*Attorneys for Plaintiff*
*Medical Mutual of Ohio*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| MEDICAL MUTUAL OF OHIO, | ) | CASE NO.: |
|---|---|---|
| Plaintiff, | ) ) | JUDGE: |
| vs. | ) ) | |
| ROBERT SUNYAK, | ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Defendant. | ) ) ) ) ) | |

## I. INTRODUCTION

This is an action for emergency injunctive relief to compel Sunyak, a former IT Security Specialist for Medical Mutual who surreptitiously downloaded for his personal use certain of Medical Mutual's most sensitive and proprietary trade secrets – including critical information regarding its IT security and vulnerabilities – to return that information to Medical Mutual and cease any use, transfer or disclosure of the information. Sunyak does not deny that he retained such information, but nevertheless has refused to return it, necessitating this lawsuit. Sunyak also surreptitiously and without authorization deleted certain information from Medical Mutual's databases, causing impact to Medical Mutual's operations.

Medical Mutual of Ohio ("Medical Mutual") is a provider of health insurance and claims administration services to individuals and entities throughout Ohio. Defendant Robert Sunyak ("Sunyak") is a former employee of Medical Mutual. Since his separation from employment, it has been discovered that Sunyak downloaded and externally shared numerous company files, data,

and intellectual property for personal use, including multiple meeting records, e-mail archival data, and internal product and process documentation. After sharing the data externally for his personal use, Sunyak then deleted file and e-mail content from Medical Mutual's systems, including data from his Microsoft Exchange, OneDrive, Network Shares, and on the company laptop computer.

Medical Mutual employed Sunyak as its IT Security Specialist III. Sunyak's job responsibilities included complex day-to-day operation of Medical Mutual's security functions relative to policy administration and enforcement, project management, vulnerability management, and ensuring system security and audit controls are in place and functioning properly. As part of his duties, Sunyak was a critical member of the vulnerability management team, responsible for review and oversight surrounding corporate risk posture, internal and external threats, and remediation and mitigation of IT vulnerabilities.

As an IT security specialist, given the depth of Sunyak's involvement in Medical Mutual's business, and the extent of his knowledge of and access to the Company's confidential and proprietary information, Medical Mutual required Sunyak to sign a confidentiality agreement, upon hire and annually thereafter. Most recently, Sunyak signed an Compliance Certification on August 16, 2022. The Compliance Certification certifies that Sunyak reviewed the Company's Confidential Policy and has reviewed and agreed to the terms of the Confidential, Non-Disclosure, and Intellectual Property Agreement (the "Agreement").[1]

In his Agreement, Sunyak agreed to various restrictions on his activities and use of Medical Mutual's information. Medical Mutual gave Sunyak access to this information in reliance upon the commitment Sunyak made and the restrictions to which he agreed. Those restrictions included, that he would not use or disclose Medical Mutual's confidential and proprietary information except

---

[1] The Compliance Certification, Confidentiality Policy, and Confidentiality, Non-Disclosure, and Intellectual Property Agreement are attached to the Complaint as Exhibits A-C.

as in connection with his duties as a Medical Mutual employee and in furtherance of legitimate interests of the Company.

On February 20, 2023, Sunyak informed Medical Mutual of his intent to resign from his employment. Sunyak's last day of employment with Medical Mutual was on February 23, 2023.

On February 23, 2023, Medical Mutual discovered that, beginning in February 2023, Sunyak collected, downloaded, and externally shared numerous company files, data, and intellectual property for personal use, including multiple meeting records, e-mail archival data, and internal product and process documentation. After sharing the data externally for his personal use, Sunyak then deleted file and e-mail content from Medical Mutual's systems, including data from his Microsoft Exchange, OneDrive, Network Shares, and on the company laptop computer. The data at issue is extremely sensitive and contained company proprietary information including confidential security information that presents risks to the organization, including risk of compromise and breach to one or more of Medical Mutual's critical systems and risk of a complete system takeover by an outside threat using the data as blueprint to compromise internal or external assets. Additionally, the destruction of Medical Mutual's confidential and proprietary information has, among other things, created operational challenges internally.

Medical Mutual has made multiple attempts to communicate with Sunyak regarding these concerns, including a letter sent on or about February 24, 2023, advising Sunyak that his actions constitute a breach of the Agreement and requesting written assurance that he has deleted and/or destroyed any and all Company property in his possession and will not use any such information in the future for any purposes. Nonetheless, Sunyak failed to substantively respond and instead confirmed his intent to use Medical Mutual's confidential and proprietary information for purposes other than in furtherance of the legitimate interests of the Company.

Given his actions to date, it is clear that, without an injunction, Medical Mutual faces imminent irreparable harm. Medical Mutual faces the loss of its confidential and proprietary information and is at risk for catastrophic security breaches and both internal and external threats to highly sensitive information. For these reasons, as will be more fully explained below, this Court should issue the requested Temporary Restraining Order or Preliminary Injunction.

II. **FACTUAL BACKGROUND**

    A. **Medical Mutual's Business**

Medical Mutual, with corporate headquarters in Cleveland, Ohio, is a provider of health insurance and claims administration services to individuals and entities throughout Ohio. (Compl. ¶ 5). Given the nature of its business and services, Medical Mutual's IT security specialists have access to and are responsible for protecting extensive personal information concerning policyholders; medical diagnoses; corporate system procedures; business information, including business strategies, sales, marketing, internal systems, and financial data; and medical and financial information of members and providers including, but not limited to, Individually Identifiable Information and Protected Health Information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (Compl. ¶ 10). In addition, IT security specialists associated with the vulnerability management team, have access to highly sensitive data that is confidential and proprietary, including information regarding Medical Mutual's IT security information and vulnerability details. (Compl. ¶ 9).

    B. **Sunyak's Position and Access to Medical Mutual's Confidential and Proprietary Information.**

Sunyak first became employed by Medical Mutual in September 1999 and has been subject to a Confidentiality Agreement since the onset of his employment. (Compl. ¶ 6). In 2015, Sunyak began working in Medical Mutual's IT Security Department as IT Security Specialist III. (Compl.

¶ 7). In that position, Sunyak was responsible for complex day-to-day operation of Medical Mutual's security functions relative to policy administration and enforcement, project management, vulnerability management, and ensuring system security and audit controls are in place and functioning properly. (Compl. ¶ 7). As part of his duties, Sunyak was also a critical member of the vulnerability management team, responsible for review and oversight surrounding corporate risk posture, internal and external threats, and remediation and mitigation of IT vulnerabilities. (Compl. ¶ 8).

As a result of his position, Sunyak had access to highly sensitive data that is confidential and proprietary, including information regarding Medical Mutual's IT security information and vulnerability details. (Compl. ¶ 9). Sunyak also had access to and was responsible for protecting extensive personal information concerning policyholders; medical diagnoses; corporate system procedures; business information, including business strategies, sales, marketing, internal systems, and financial data; and medical and financial information of members and providers including, but not limited to, Individually Identifiable Information and Protected Health Information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (Compl. ¶ 10). All of this information in Sunyak's possession is confidential and proprietary, not publicly known, and has been generated and cultivated by Medical Mutual over many years for internal use and operation. (Compl. ¶ 11).

Due to the information's confidential and proprietary nature, Medical Mutual engages in reasonable efforts to protect it from disclosure. (Compl. ¶ 12). To, help ensure the privacy of information stored on computer files, all employees are assigned a password protected code that must be used to retrieve certain information. (Compl. ¶ 14). Highly sensitive information, such as vulnerability management data, is subject to additional restrictions, including but not limited to,

limited access to a handful of people responsible for vulnerability management, including Sunyak. (Compl. ¶14). In particular, Medical Mutual also requires employees who are exposed to trade secrets and confidential and proprietary information to sign written agreements that restricted their ability to use or disclose that information. (Compl. ¶15). Sunyak signed – and has now breached – exactly such an Agreement with Medical Mutual.

C.   **Sunyak's Agreement with Medical Mutual.**

As a condition of his employment, Medical Mutual required Sunyak to sign a confidentiality agreement, upon hire in 1999, and annually thereafter, as part of compliance training. Most recently, Sunyak signed a Compliance Certification on August 16, 2022 (Ex. A to the Complaint.). As set forth above, the Compliance Certification certifies that Sunyak reviewed the Company's Confidential Policy and reviewed and agreed to the terms of the Confidential, Non-Disclosure, and Intellectual Property Agreement ("the Agreement"). Several provisions in the Agreement are directly relevant. First, the Agreement contains provisions related to non-disclosure of confidential information:

> 1. <u>Non-disclosure of Confidential Information</u>. I agree at all times to hold as secret and confidential any and all knowledge, technical information, financial information, business information, developments, trade secrets, know-how and confidences of Medical Mutual or its business or business affiliates, including, without limitation,
>
> (a) medical diagnoses, procedures used in handling specific cases, medical and financial information of Members and providers including, but not limited to, individually identifiable health information and other protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA");
>
> (b) information or business secrets relating to Members, providers, customers, vendors, consultants, licensees, business associates, business affiliates, strategies, business, conduct or operations of Medical Mutual;
>
> (c) the existence or modification of, or possible new uses or applications for, any of Medical Mutual's products or services;

(d) any of Medical Mutual's Member lists, pricing and purchasing information or policies;

(e) any methods, processes, ways of business employed in the use, sale or marketing of Medical Mutual's products or services;

(f) any other information treated as confidential, proprietary, sensitive, or a trade secret by Medical Mutual or its Members, providers, customers, vendors, consultants, licensees, business associates, or other business affiliates (collectively, including the foregoing items, "Confidential Information") of which I acquired knowledge before, during, or after my employment with Medical Mutual.

(Section 1 of the Agreement; Ex. C to the Complaint).

In relevant part, the Agreement obligates employees to protect Medical Mutual's trade secrets:

2. <u>Defend Trade Secrets Act</u>. I agree and understand that my non-disclosure obligations set forth in Paragraph 2 above prohibits me from using (but for in connection with my employment), disclosing and/or misappropriating trade secrets as defend and protected by federal law . . . ."

(Section 2 of the Agreement; Ex. C to the Complaint).

By signing the Agreement, Sunyak acknowledged that Medical Mutual's confidential information is highly sensitive, valuable, and proprietary, and that disclosure of it to third parties or unauthorized users would cause Medical Mutual serious harm. Additionally, he further agreed to the following terms under circumstances where he is no longer employed by the Company:

After the termination of my employment, I will not use any Confidential Information for any purpose. Upon the cessation of my employment with Medical Mutual, I shall promptly return to Medical Mutual any and all Confidential Information, written or otherwise, in any medium, whether hard copy or electronic, that I received from Medical Mutual or any other source. This requirement applies to any copies made of Confidential Information, to any materials made or derived from Confidential Information, and to any materials that otherwise include Confidential Information. This requirement includes, but is not limited to, Company documents, handwritten notes, emails, and electronic information, documents, and paper copies. I agree to return any such information in any form unless an alternative method of disposition or destruction is approved by Medical Mutual.

(Agreement; Ex. A to the Complaint, at p. 1-2).

### D. Sunyak's Resignation and Misappropriation of Medical Mutual's Confidential and Proprietary Information and Trade Secrets.

On February 20, 2023, Sunyak informed Medical Mutual of his intent to resign from his employment. Sunyak's last day of employment with Medical Mutual was on February 23, 2023. (Compl. ¶ 22).

On February 23, 2023, Medical Mutual discovered that, beginning in February 2023, Sunyak collected, downloaded, and externally shared numerous company files, data, and intellectual property for personal use, including multiple meeting records, e-mail archival data, and internal product and process documentation. (Compl. ¶23). This confidential and proprietary information was either uploaded to Sunyak's personal Google Drive, sent electronically to his personal Google Mail account, or downloaded to a USB Flash Drive, upon information and belief. (Compl. ¶ 24). After sharing the data externally for his personal use, Sunyak then deleted file and e-mail content from Medical Mutual's systems, including data from his Microsoft Exchange, OneDrive, Network Shares, and on the company laptop computer. (Compl. ¶ 25). A summary of the information removed and deleted is attached to the Complaint as Ex. D.

This data is extremely sensitive and contained company proprietary information including confidential security information that presents risks to the organization, including risk of compromise and breach to one or more of Medical Mutual's critical systems and risk of a complete system takeover by an outside threat using the data as blueprint to compromise internal or external assets. (Compl. ¶ 26). Sunyak's acts of misconduct are in direct violation with his Agreement with Medical Mutual. The misappropriation and destruction of Medical Mutual's confidential and proprietary information and trade secrets has, among other things, created operational challenges internally. (Compl. ¶ 25).

Medical Mutual has made multiple attempts to communicate with Sunyak regarding these concerns, including a letter sent on or about February 24, 2023, advising Sunyak that his actions constitute a breach of the Agreement and requesting written assurance that he has deleted and/or destroyed any and all Company property in his possession and will not use any such information in the future for any purposes. (Compl. ¶ 27). Medical Mutual further advised that Sunyak had until 12:00 P.M. on February 27, 2023 to respond. (Compl. ¶ 27).

On February 24, 2023, Medical Mutual received an e-mail from Sunyak which expressed his intent to use Medical Mutual's confidential and proprietary information for a purpose other than to further the legitimate interests of the Company. (Compl. ¶ 28). Sunyak ultimately ignored Medical Mutual's request and failed to provide written assurance that he deleted and/or destroyed any and all Company property in his possession and will not use any such information in the future for any purpose by Medical Mutual's February 27, 2023 deadline. (Compl. ¶ 29). Medical Mutual has received no further communication from Sunyak or his counsel indicating that he would avoid or correct the violations that Medical Mutual identified. (Compl. ¶ 30).

Sunyak's access to Medical Mutual's confidential and proprietary information and trade secrets, coupled with his refusal to delete and/or destroy the same, places Medical Mutual at risk for catastrophic security breaches and both internal and external threats to highly sensitive information. Medical Mutual is left with no choice but to seek injunctive relief.

Unless immediately enjoined, Sunyak will continue to breach his Agreement and may use and disclose Medical Mutual's trade secrets and confidential information other than in furtherance of the Company's legitimate interests. No amount of money would be able to compensate Medical Mutual for the loss of, among other things, the Company's confidential security information and vulnerability management data.

## III. LEGAL ANALYSIS

The standard for granting a temporary restraining order or preliminary injunction requires the moving party to demonstrate:

(1)  a substantial likelihood that it will prevail on the merits;

(2)  it will suffer irreparable injury unless the injunction is issued;

(3)  no third parties will be unjustifiably harmed if the injunction is granted;

(4)  the injunction will serve the public interest.

*Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st. Dist. 2000); *Valco Cincinnati. Inc. v. N&D Machining Service, Inc.*, 24 Ohio St.3d 41, 492 N.E.2d 814 (1986). In determining whether to grant injunctive relief, no one factor is dispositive. *Cleveland v. Cleveland Elec. Illum. Co*. 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist. 1996). The four factors must be balanced with the "flexibility which traditionally has characterized the law of equity." *Id*.

Here, based upon a balancing of the four factors, Medical Mutual is entitled to a temporary restraining order or preliminary injunction to enforce the lawful obligations owed by Sunyak and to protect Medical Mutual's legitimate business interests, confidential business information, confidential security information, and vulnerability management data.

### A.  Medical Mutual Has a Substantial Likelihood of Success on the Merits.

The evidence demonstrates Medical Mutual is substantially likely to succeed on its claims of misappropriation of trade secrets under both federal and Ohio law, as well as its breach of contract claim.

To prevail on a claim for misappropriation of trade secrets under Ohio law, a plaintiff must establish: (1) the existence of a trade secret; (2) the acquisition of that trade secret through a

confidential relationship; and (3) the unauthorized use of that trade secret. *Noco Co. v. CTEK, Inc.*, 2020 U.S. Dist. LEXIS 27237, *16-17, (citing *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 985 (N.E. Ohio 2008)). Similarly, the Defend Trade Secrets Act provides a private cause of action under federal law for owners of misappropriated trade secrets "if the trade secret is related to a product or service or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. To bring a claim under the DTSA, the Plaintiff must plead: (1) the existence of a protectable trade secret; (2) misappropriation of the trade secret by Defendants; and (3) that the trade secret is related to a product or service used in interstate or foreign commerce. *See Noco Co.,* 2020 U.S. Dist. LEXIS 27237 at *16-17; 18 U.S.C. § 1836(b)(1).

Here, by virtue of his position with Medical Mutual, Sunyak had knowledge of trade secrets, belonging to Medical Mutual, including but not limited to the vulnerability management data outlined above. Medical Mutual's trade secrets are not available or known to the public. Medical Mutual's trade secrets are related to products and services used and/or intended to be used in interstate commerce. As described above, Medical Mutual has at all times used reasonable protective measures to keep the secrecy of its trade secrets.

Sunyak has misappropriated Medical Mutual's confidential and trade secret information, including but not limited to, multiple meeting records, e-mail archival data, and internal product and process documentation. This confidential and proprietary information was either uploaded to Sunyak's personal Google Drive, sent electronically to his personal Google Mail account, or downloaded to a USB Flash Drive, upon information and belief. A summary of the information removed and deleted is attached to the Complaint as Ex. D. The misappropriation of trade secrets constitutes imminent, immediate, and irreparable harm to Medical Mutual which it cannot be adequately compensated by monetary damages alone if the injunctive relief requested is not

granted. The harm to Medical Mutual includes, but is not limited to, risk of compromise and breach to one or more of the Company's critical systems and risk of a complete system takeover by an outside threat using the data as blueprint to compromise internal or external assets.

Moreover, given Sunyak surreptitiously downloaded Medical Mutual's most sensitive and proprietary information, including critical information regarding its IT security and vulnerabilities, and further surreptitiously and without authorization deleted certain information from the Medical Mutual's systems, Medical Mutual has reasonable and legitimate concerns that Sunyak may also attempt to destroy, move, hide, or otherwise make such information inaccessible to the Court. In light of such evidence, Medical Mutual has a substantial likelihood of success on the merits of its claim against Sunyak for misappropriation of confidential and proprietary trade secret information under both federal and Ohio law in violation of 18 U.S.C. § 1836 and R.C. 1333.61.

Medical Mutual also has a substantial likelihood of success on the merits of its breach of contract claim. The essential elements of a cause of action for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant and resulting damage to the plaintiff. *Ford v. Brooks*, 10th Dist. App. No. 11AP-664, 2012 Ohio 943, ¶19. A breach is the failure, without legal excuse, to perform any promise that forms a whole or part of the contract. *National City Bk. of Cleveland v. Erskine & Sons*, 158 Ohio St. 450, paragraph one of the syllabus (1953).

Here, the evidence of a contract cannot be denied. The Agreement, which incorporates Medical Mutual's Terms and Conditions, speak for themselves. (Ex. C to the Complaint.) The Agreement relates to protection to Medical Mutual's Confidential, Non-Disclosure, and Intellectual Property. By its terms, the Agreement acknowledges that Medical Mutual maintains and enforces a policy preserving the confidentiality and proprietary nature of its Confidential

Information. By signing the Agreement, Sunyak indicated he understood and acknowledged that Medical Mutual's confidential information is highly sensitive, valuable, and proprietary and that disclosure of it to third parties or other unauthorized users would cause Medical Mutual serious harm. Additionally, as a condition to his employment and continued employment with Medical Mutual, Sunyak agreed to a number of express terms, as set forth above. Of particular importance, Sunyak agreed to not use *any* confidential information for *any* purpose after the termination of his employment.

Here, Sunyak collected, downloaded, and externally shared numerous company files, data, and intellectual property for personal use, including multiple meeting records, e-mail archival data, and internal product and process documentation. After sharing the data externally for his personal use, Sunyak then deleted all file and e-mail content from Medical Mutual's systems, including data from his Microsoft Exchange, OneDrive, Network Shares, and on the company laptop computer. Since then, Sunyak has expressed his intention to use Medical Mutual's confidential and proprietary information and trade secrets for purposes other than in furtherance of the legitimate interests of the Company. Sunyak's acts of misconduct are in direct violation of the express terms of the Agreement.

Accordingly, Medical Mutual has a substantial likelihood of success on the merits of its breach of contract claim. *See Ten Pins of Ohio, LLC v. Freeway Lanes Bowling Grp., LLC,* 2012 Ohio Misc. LEXIS 46, at *7 (Ct. Com. Pl. Apr. 26, 2012) (granting motion for temporary restraining order on plaintiff's breach of contract claim and holding defendant's failure to perform was not excused).

### B. Medical Mutual Will Suffer Irreparable Injury if Relief Is Not Granted.

In addition, Medical Mutual will suffer irreparable harm if Sunyak is permitted to withhold Medical Mutual's highly sensitive, confidential and proprietary information, including confidential security information and vulnerability management data. An injury is irreparable if it is:

> [O]f such a character that a fair and reasonable redress may not be had in a court of law, so that to refuse the injunction would be a denial of justice; where, in other words, from the nature of the act, or from the circumstances surrounding the person injured, or from the financial condition of the person committing it, it cannot be readily, adequately, and completely compensated for with money. To be irreparable, the injury need not be beyond the possibility of repair or beyond possible compensation and damages, nor need it be very great. The term "irreparable damage" does not have reference to the amount of damage caused, but rather to the difficulty of measuring the amount of damages inflicted.

*Arthur Murray Dance Studios of Cleveland, Inc., v. Witter*, 62 Ohio Law Abs. 17, 42, 105 N.E. 2d 685, 702 (C.P. 1952). Although irreparable harm is generally not presumed, the threat of irreparable harm is sufficient to warrant injunctive relief. *See Proctor & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 747 N.E.2d 268 (1st Dist. 2000) (holding that to show irreparable harm in the absence of an injunction, the moving party need not prove actual harm: the mere threat of harm is sufficient). Moreover, Ohio law makes very clear that "a risk of loss or damage to a business entity qualifies as irreparable harm." *Franks v. Rankin*, 2012 Ohio 1920, *P36 (Franklin Cty.).

This case presents a classic situation of irreparable harm. Sunyak's misconduct, and any disclosure of Medical Mutual's confidential and proprietary information resulting therefrom, constitutes imminent, immediate and irreparable harm to Medical Mutual for which it cannot be adequately compensated. Sunyak has a detailed and comprehensive knowledge of Medical Mutual's confidential and proprietary information and trade secrets. He will not give it back. The potential harm to Medical Mutual includes, but is not limited to, risk for catastrophic security

breaches and both internal and external threats to highly sensitive information. In reality, the harm which would result to Medical Mutual is incalculable.

Courts applying Ohio law have held that incalculable damages merit injunctive relief. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F. Supp. 1242, 1247 (N.D. Ohio 1992) ("It is impossible to determine at this time the numbers of . . . clients who will be pirated away by [the defendant], nor is it possible to determine with any degree of certainty the commissions each of these clients will generate.").

The potential for irreparable harm absent injunctive relief can hardly be disputed. Medical Mutual's non-disclosure and trade secret protection are in place for the purposes of ensuring confidential and proprietary information will be protected when employees such as Sunyak leave the company. The importance of having this protection cannot be measured in monetary terms. Only the requested injunctive relief will allow Medical Mutual to avoid any losses due to Sunyak's misconduct.

### C. No Third Party Will Be Unjustifiably Harmed By Granting the Injunction.

The injunction and order of specific performance requested by Medical Mutual will not cause any unjustifiable harm or inconvenience to any third party. Medical Mutual is only seeking to protect its confidential, proprietary and trade secret information for disclosure and enforce the obligations voluntarily agreed to by Sunyak in the Agreement. Simply put, a temporary restraining order will not affect any party other than Sunyak and Medical Mutual. No third party has a legitimate or authorized need for this information. To the contrary, third parties such as Medical Mutual's policyholders and providers will benefit from the temporary restraining order or preliminary injunction, which will preserve their highly sensitive and confidential, medical and financial information, including, but not limited to, Identifiable Information and Protected Health

Information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

        **D.      The Public Interest Will Be Served by Issuance of the Requested Order.**

It is well settled that the public interest weighs in favor of enforcing contractual obligations between the parties. "As a rule, Ohio law finds the enforcement of contractual obligations to be of itself an important social policy interest." *Life Line Screening of Am., Ltd. v. Calger*, 145 Ohio Misc. 2d 6, 18, 2006-Ohio-7322, 881 N.E.2d 932 (C.P.); see also *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 152 Ohio App.3d 86, 2003-Ohio-1074, 786 N.E.2d 914, ¶ 39 (7th Dist. 2003) ("Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest."); *Dealer Specialties, Inc. v. Car Data 24/7, Inc.*, No. 1:15-cv-170, 2016 U.S. Dist. LEXIS 130523, at *24 ([T]o the extent the public has an interest at all, it is in seeing that reasonable restrictive covenants are preserved and enforced."). The same result is warranted in this case.

**IV.    <u>MEDICAL MUTUAL SHOULD NOT BE REQUIRED TO POST A BOND</u>**

Medical Mutual is not required to post a bond under the facts of this case or Federal Rule 65(c). *See, e.g., Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) ("While [Rule 65(c)] appears to be mandatory, 'the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.'") (emphasis in original) (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Because the injunctive relief requested here would merely require Sunyak to refrain from improperly using Medical Mutual's confidential and proprietary information and trade secrets, which Sunyak is not entitled to do, Sunyak can suffer no harm from a temporary restraining order or preliminary injunction, and no bond is needed.

## V. CONCLUSION

Medical Mutual can satisfy all the elements necessary for a temporary restraining order or preliminary injunction—it is likely to prevail on its claim, it will suffer irreparable harm in the absence of an injunction, and the injunction will neither harm third parties nor the public interest. Accordingly, and for the reasons outlined above, Medical Mutual requests that this Court issue a temporary restraining order or preliminary injunction to prevent irreparable harm to Medical Mutual and to require Sunyak to conduct himself in a manner consistent with Ohio law. A Proposed Order is attached.

Respectfully submitted,

*/s/ Christopher C. Koehler*
Christopher C. Koehler (0059384)
ckoehler@frantzward.com
Michael E. Smith (0042372)
msmith@frantzward.com
Meghan C. Lewallen (0090762)
mlewallen@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216-515-1660 – Phone
216-515-1650 – Fax

*Attorneys for Plaintiff*
*Medical Mutual of Ohio*

## CERTIFICATE OF SERVICE

   I do hereby certify that, on this 1st day of March 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. A copy of the motion was also sent via electronic mail and FedEx to Defendant Robert Sunyak at the following address:

Robert Sunyak
911 Marks Road, Apt. J
Brunswick, OH 44212
bobby.sunyak@gmail.com

                */s/ Christopher C. Koehler*
                *One of the Attorneys for Plaintiff Medical*
                *Mutual of Ohio*